Opinion Issued March 6, 2008















Opinion Issued March 6, 2008

 

 

 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-07-00268-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



TEXAS MUTUAL INSURANCE COMPANY, Appellant

 

V.

 

RICHARD HAVARD, Appellee

 

 



On Appeal from the 21st District Court

Washington County, Texas

Trial Court Cause No. 33310

 








 



MEMORANDUM OPINION

          This
appeal arises from a worker’s compensation case in which Texas Mutual Insurance
Company disputes the compensability of Richard Havard’s injuries.  After a bench trial, the trial court found
that Havard was not intoxicated at the time of his injury, and thus, it was
compensable.  In three issues, Texas
Mutual contends that the evidence is legally and factually insufficient, and
that the trial court erred in refusing to sanction Havard.

Background

          In
April 2004, Pneu-Rock Transportation employed Richard Havard as a truck
driver.  Texas Mutual insured Pneu-Rock
for worker’s compensation claims.  Havard
had worked as a truck driver for more than twenty years, and had been working
for Pneu-Rock since 2000.  Havard had
been randomly drug tested prior to working for Pneu-Rock, and also by Pneu-Rock
in 2000, 2001, and December 2003.  All of
those tests were negative.  On the
morning of April 8, 2004, Havard was scheduled to pick up a load of asphalt
near the Houston Ship Channel.  He went
to bed at 8:00 p.m. and woke up at 1:00 am. 
He admitted to taking no-doze and mini-ephedra with his morning coffee.

          Upon
arriving at the pick-up facility, Havard inputted numerous identification
numbers on the control box to gain entry. 
Once inside, Havard maneuvered his semi-truck on a narrow loading ramp,
with approximately three or four inches on each side before a two-foot
drop.  Havard then loaded the asphalt,
which required him to determine the amount of gallons of asphalt he needed to
prevent being overweight, and to attach a loading spout.  After Havard had fully loaded the tanker,
Havard filed his paperwork and left the facility.  A worker at the facility averred that Havard
did not appear to be intoxicated.

          After
driving approximately thirty miles on the freeway, Havard choked on a sip of
his coffee and lost control of his truck. 
The truck ran into a guardrail, and Havard was ejected from the cab,
falling 10-15 feet below.  The first EMS responder asked Havard whether he had taken drugs,
and Havard replied that he had taken no-doze, ephedra, and “meth.”  An air ambulance transported Havard to Memorial Hermann
Hospital in Houston. 
Approximately thirty-five hours after the accident, medical personnel
obtained a urine sample from Havard through a catheter, while he was
unconscious.  The urine sample tested
positive for benzoylecgonine, a cocaine metabolite. 

Following the positive test, Texas
Mutual denied compensability, and Havard invoked his administrative
remedies.  At the Contested Case Hearing
(“CCH”) in November 2004, the parties presented evidence on the issue of
intoxication, which included testimony from experts for both sides concerning
the interpretation of a positive urine test, as well as testimony from Havard
and a facility worker recounting the events on the day of the accident.  The CCH officer determined that Havard had
sustained a compensable injury and was not intoxicated at the time of his
injuries.  Texas Mutual appealed the
decision to the Appeals Panel, who affirmed the decision of the CCH officer by
operation of law.  Texas Mutual then
sought judicial review.  After a bench
trial, the trial court affirmed the decision of the appeals panel, and rendered
judgment in favor of Havard.

Sufficiency of the Evidence

          Texas
Mutual contends that the evidence is legally and factually insufficient to
support a finding that Havard was not intoxicated at the time of his
accident.  In support of its contention,
Texas Mutual asserts that the trial court applied an incorrect presumption of
intoxication under the Texas Labor Code.

Standard of Review

In an appeal from a bench trial, a
trial court’s findings of fact have the same weight as a jury’s verdict.  Amador v. Berrospe, 961 S.W.2d 205,
207 (Tex. App.—Houston [1st Dist.] 1996, writ denied).  When challenged, findings of fact are not
conclusive if, as here, there is a complete reporter’s record.  Id.  When there is a reporter’s record, the trial
court’s findings of fact are binding only if supported by the evidence.  Id.  If the findings are challenged, we review the
sufficiency of the evidence supporting the findings by applying the same
standards that we use in reviewing the legal or factual sufficiency of the
evidence supporting jury findings.  Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex.
1994).

          If
a party attacks the legal sufficiency of an adverse finding on an issue as to
which it bears the burden of proof, then it must demonstrate on appeal that the
evidence conclusively established all vital facts in support of the issue.  Sterner v. Marathon Oil Co., 767
S.W.2d 686, 690 (Tex.
1989).  If no evidence exists to support
the finding, we examine the entire record to determine if the contrary
proposition is established as a matter of law. 
Id.; see City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex.
2005) (test for legal sufficiency is whether evidence at trial would enable
reasonable and fair-minded people to reach verdict under review).

Worker’s Compensation Act Appeals

The Texas Supreme Court has held that
a Texas Workers’ Compensation Commission (TWCC) Appeals Panel’s final decision
may be appealed to the courts under a “modified de novo review.” Texas Workers' Compensation Comm'n v. Garcia,
893 S.W.2d 504, 530 (Tex. 1995).
Under this modified de novo review, all issues regarding compensability of the
injury may be tried by the jury or court. Id. at 528; see Tex. Lab. Code Ann. §§ 410.301, .304
(Vernon 2006).  Modified de novo review
means: (1) the trial court is informed of the TWCC Appeals Panel’s decision,
(2) evidence of the extent of impairment is limited to that presented to the
TWCC, unless the court makes a threshold finding that the claimant’s condition
has substantially changed, and (3) the court is required to adopt the specific
impairment rating arrived at by one of the physicians in the case. Tex. Lab. Code Ann. §§ 410.304,
.306–.307; Garcia, 893 S.W.2d at 528. The court, although informed of
the TWCC’s decision, is not required to accord it any particular weight.  Id.
at 515. The fact finder does not review the Appeals Panel’s decision for
“reasonableness,” but rather independently decides the issues by a
preponderance of the evidence.  Id. at 531.  The party appealing the TWCC’s ruling bears
the burden of proof by a preponderance of the evidence.  Tex. Lab. Code Ann. § 410.303.  Because Texas Mutual’s claim was denied at the
administrative level, it had the burden of proving by a preponderance of the
evidence that Havard was intoxicated at the time of the accident.  See id.

Intoxication

The workers’ compensation laws
prohibit the recovery of compensation where, at the time of injury, an employee
is intoxicated.  Tex. Lab. Code Ann. § 406.032(1)(A) (Vernon 2006).  

“Intoxication” means the state of:

 

(1)  having an
alcohol concentration to qualify as intoxicated under Section 49.01(2), Penal
Code;  or

 

(2) not having the normal use of mental or physical
faculties resulting from the voluntary introduction into the body of:

 

(A) an alcoholic beverage, as defined by Section 1.04,
Alcoholic Beverage Code; [or]

 

(B) a controlled substance or controlled substance
analogue, as defined by Section 481.002, Health and Safety Code.

 

Id. § 401.013(a).  Cocaine is a controlled substance included
under § 481.002.  Tex. Health &
Safety Code Ann. § 481.002 (Vernon 2006).

In cases involving controlled
substances, there is no level or test defined by the statute that establishes
per se if a person has lost use of his or her physical and mental faculties.  Am.
Interstate Ins. Co. v. Hinson, 172 S.W.3d 108, 115 (Tex.
App.—Beaumont 2005, pet. denied).  The
statutory standard for cocaine is relatively subjective.  See id.;
see also Tex. Lab. Code Ann. § 401.013(a) (2).  

The Texas Labor Code includes a
presumption that states: “[o]n the voluntary introduction into the body of any
substance listed under Subsection (a)(2)(B), based on a blood test or
urinalysis, it is a rebuttable presumption that a person is intoxicated and
does not have the normal use of mental or physical faculties.”  Tex.
Lab. Code Ann. § 401.013(c).  In
enacting the amendment that created §401.013(c) in 2005, the Texas Legislature
codified former case law.  See TWCC App. No. 021751, 2002 WL 31115380,
Aug. 26, 2002 (employee is presumed sober, but when carrier rebuts presumption
of sobriety with probative evidence of intoxication, burden shifts to employee to
prove he was not intoxicated at time of injury); TWCC App. No. 032618, 2003 WL
23011731, Nov. 19, 2003; see also TWCC
App. No. 012208, 2001 WL 1472150, Oct. 23, 2001 (positive test for controlled
substance will generally shift burden to claimant to prove he was not intoxicated at time of injury).  Texas Mutual contends that the trial court
did not apply this presumption.  

We find no indication in the record
that either the TWCC or the trial court refused to apply the rebuttable
presumption in this case that was embodied in prior case law.  To the contrary, as explained in TWCC Appeal
No. 021751, an employee is presumed sober; however, when the carrier rebuts the
presumption of sobriety with probative evidence of intoxication, the burden
shifts to the employee to prove that he was not intoxicated at the time of the
injury.  2002 WL 31115380, TWCC App. No.
032618, 2003 WL 23011731; see also TWCC
App. No. 012208, 2001 WL 1472150 (positive test for controlled substance will
generally shift burden to claimant to prove he was not intoxicated
at time of injury).  The trial court’s
findings of fact and conclusions of law do not reveal any refusal to place the
proper burden on the claimant.  In
analyzing Texas Mutual’s challenges to the legal sufficiency, we review whether
the Appeals Panel and the trial court reasonably could have concluded that
Havard rebutted the presumption. 
Ultimately, in appeals from the TWCC, the burden is on the party who did
not prevail to prove that no valid basis exists for the decision of the
commission and the trial court.  See Tex.
Lab. Code Ann. § 410.303 (b) (Vernon 2006).

Legal Sufficiency

          Texas
Mutual contends that the evidence is legally insufficient to support a finding
that Havard was not intoxicated at the time of the accident.  Texas Mutual’s evidence consisted of the
positive urine test and an expert, Dr. Avery, who testified that based on the
urine test, Havard was intoxicated at the time of the accident.  To controvert that evidence, Havard presented
testimony at trial from toxicologist, E. Lykissa, who testified that the
positive urine test does not prove that Havard was suffering from the effects
of cocaine when he wrecked the truck.   
According to Lykissa, the urine test only proves that at some point in
time, Havard had ingested cocaine.  In
addition, Havard offered evidence of a second urine test, in which the amount
of cocaine metabolites was significantly lower, as well as a hair test, which
was negative for cocaine.  Havard
testified that he had never used cocaine and was not intoxicated at the time of
the accident.  He also described
everything he did the morning of the accident, which included maneuvering his
semi-truck around tight corners and onto a narrow platform, as well as entering
numerous codes and hooking up equipment to receive his load.  Furthermore, Havard drove over thirty miles,
without incident, prior to the accident. 
A worker at the facility where Havard loaded his truck averred that
Havard did not appear to be intoxicated.

We conclude that a reasonable fact
finder could conclude that Havard was not intoxicated at the time of his injury
as it is defined in the Labor Code.  The
scientific and expert evidence introduced during the trial in this case is not
conclusive as a matter of law that Havard was intoxicated at the time of the
accident, and the evidence does not meet the threshold in the Labor Code at
which such evidence is not rebuttable under section 401.013(a)(2)(b).  Simply put, Havard rebutted the presumption
of intoxication to the satisfaction of the CCH officer, the TWCC Appeals Panel,
and the trial court.  We hold that the
evidence is legally sufficient to support the trial court’s finding.

Factual Sufficiency

Texas Mutual also asserts that the
evidence is factually insufficient to support the verdict.  Because Texas Mutual had the burden of proving
Havard was intoxicated, Texas Mutual must show that the verdict is against the
great weight and preponderance of the evidence.  Raw Hide
Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 275–76 (Tex. App.—Amarillo 1988, writ denied).  

          Texas
Mutual’s evidence consisted of a urine test that contained a high number of
cocaine metabolites supported by Dr. Avery’s testimony that based upon the high
number of metabolites, Havard was intoxicated at the time of the accident.  Avery also testified that based upon his
analysis of the EMS report from the accident,
Havard had a variation in pulse and blood pressure consistent with someone
under the influence of cocaine.  Texas
Mutual further presented evidence that, when asked by EMS
about the drugs he had taken, Havard responded with no-doze, ephedra, and
“meth.”  The urinalysis, however, showed
no indication of amphetamines or methamphetamines.

          In
contrast, Havard presented his own expert, Lykissa.  According to Lykissa’s tests, the number of
metabolites in Havard’s urine was much lower than the amount found by
Avery.  In addition, Lykissa performed a
test on Havard’s hair, which was negative for cocaine.  Lykissa conceded, however, that cocaine would
only be present in a hair sample if the donor was a habitual user.  Lykissa testified that a positive urine test
is not evidence that Havard was under the influence of cocaine at the time of
the accident because it does not pinpoint when he may have been
intoxicated.  Lykissa stated that he has
seen positive urine tests from people twenty-two days after their last dose of
cocaine.  Lykissa further testified that
based on his review of Havard’s EMS
records, Harvard did not show any physiological signs of intoxication, such as
increased blood pressure, irregular pulse, or dilated pupils related to
stimulant intoxication.

          Havard,
testifying on his own behalf, denied having ever used cocaine.  He outlined the steps he took in order to
pick up his load, which included navigating his 18-wheel truck around sharp
corners and positioning it on a narrow loading area, entering numerous digital
key pad codes, calculating the correct amount of asphalt to load into the
truck, communicating with personnel at the loading station, and travelling
thirty-three miles before the accident.  Havard
supported his testimony with an affidavit from an employee that was on-site at
the loading station, who averred that Havard did not appear to be intoxicated
on the day of the accident.  Havard also
denied having used methamphetamines.

          As
the sole judge of the credibility of the witnesses, the trial court was free to
accept Havard’s and Lykissa’s testimony that he had normal use of his mental
and physical faculties at the time of the accident.  See
Southwestern Bell Media, Inc. v. Lyles,
825 S.W.2d 488, 493 (Tex.
App.—Houston [1st Dist.] 1992, writ denied) (the trial court, as fact-finder,
is sole judge of credibility of witnesses and may take into consideration all
facts and surrounding circumstances in connection with testimony of each
witness and accept or reject all or any part of testimony).  We hold that the evidence is factually
sufficient to support the trial court’s finding.

Sanctions

          In
its final issue, Texas Mutual seeks an adjudication that Havard was intoxicated
as a sanction against Havard’s counsel for submitting medical records to the
TWCC that left out the word “meth” in the medical record reporting Havard’s
statement on the day of the accident to EMS personnel.  After conducting a hearing, the trial court
refused to award sanctions.  On appeal,
Texas Mutual asks that we find that the trial court abused its discretion and
impose the sanction.

A trial court’s ruling on a motion
for sanctions is reviewed under an abuse of discretion standard.  Cire v.
Cummings, 134 S.W.3d 835, 838 (Tex.
2004) (citing Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241 (Tex.
1985)).  “The test for an abuse of
discretion is not whether, in the opinion of the reviewing court, the facts
present an appropriate case for the trial court’s action, but ‘whether the
court acted without reference to any guiding rules and principles.’”  Cire,
134 S.W.3d at 838–39 (quoting Downer,
701 S.W.2d at 241).  The choice of
discovery sanctions is within the discretion of the trial court.  TransAm.
Natural Gas Corp. v. Powell, 811
S.W.2d 913, 917 (Tex. 1991).  The trial court’s ruling should be reversed
only if it was arbitrary or unreasonable. 
Cire, 134 S.W.3d at 839.  A trial court may not impose sanctions that
are more severe than necessary to satisfy legitimate purposes.  Id.  Sanctions that are “so severe that they
preclude presentation of the merits of the case should not be assessed absent a
party’s flagrant bad faith or counsel’s callous disregard for the
responsibilities of discovery under the rules.” 
TransAm. Natural Gas Corp.,
811 S.W.2d at 918.

Pursuant to federal regulations
promulgated under the Health Insurance Portability and Accountability Act of
1996 (HIPAA), Havard’s counsel requested that Havard’s medical records be
changed to reflect that Havard never stated that he had used “meth” or
methamphetamines.  The hospital sent a
letter to Havard confirming their intent to change the reference in the record
from “methamphetamine” to “meth.”  The
records that Havard admitted at both hearings in front of the TWCC deleted all
references to Havard’s use of “meth.” 
Texas Mutual moved for sanctions against Havard’s counsel for improperly
deleting those references.  Texas Mutual
requested that the trial court determine that Havard did not bring “their claim
in good faith, that [Havard] should be sanctioned, [Texas Mutual] should be
awarded damages and attorney’s fees and as a result of this conduct, a Take
Nothing Judgment be entered.”  Havard
responded that the deletion was an inadvertent clerical error, and that a
hospital employee copied the wrong file for use in the administrative
hearings.  In addition, Havard contends
that he did not receive a legal or factual advantage because the issue in the
case was Havard’s use of cocaine, and not his use of methamphetamines for which
the urinalysis test was negative. 
Following an evidentiary hearing, the trial court denied Texas Mutual’s
request for sanctions.

Providing incorrect records to an
administrative tribunal is a serious matter. 
In reviewing Texas Mutual’s sanctions request, however, the trial court
could have considered that Havard’s counsel admitted the error to the TWCC, and
the relative harm caused by the error. 
In addition, the trial court had the unique ability to evaluate the
demeanor of the witnesses, to test the explanation of counsel, and to determine
whether the failure to send the proper records was due to neglect or to bad
faith.  Because Texas Mutual’s sanctions motion
turns on these considerations, the trial judge was in a better position to
evaluate it.  We hold that the trial
court did not abuse its discretion in refusing to sanction Havard.

Conclusion

          We
hold that the evidence is legally and factually sufficient to support the trial
court’s findings.  We further hold that
the trial court did not err in refusing to impose sanctions.  

 

 

 

Jane Bland

                                                                   Justice

 

 

Panel consists of Chief Justice
Radack and Justices Jennings and Bland.